UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

JANE DOE and JEAN COE [fictitious names],     6:15-cv-154-TC

            Plaintiffs,

                           FINDINGS AND RECOMMENDATION

    v.

CITY OF EUGENE, PETE KERNS, and
JENNIFER BILLS,

            Defendants.

COFFIN, Magistrate Judge:

     Plaintiffs, the fictitiously named Jane Doe and Jean Coe, bring this action asserting substantive due process claims, pursuant to 42 U.S.C. § 1983, against the City of Eugene, Eugene Police Chief Pete Kerns, and Eugene Police supervisor Jennifer Bills.

     Plaintiffs filed their complaint on January 28, 2015. On July 1, 2015, defendants moved to dismiss. On July 21, 2015, plaintiffs sought an extension of time in which to reply to the motion. The court granted plaintiffs an extension to July 27, 2015, but on that date, plaintiff chose to file an amended complaint and asserted that the motion to dismiss was moot despite the barely perceptible

Page 1 - FINDINGS AND RECOMMENDATION

changes to the allegations.[1] Defendants then filed another motion to dismiss on August 5, 2015. Plaintiff finally responded on August 24, 2015. With nearly two months to marshal an argument in opposition, plaintiffs instead sought the court's authorization to go on a discovery expedition, via conclusory allegations of law, in hopes of finding a case rather than alleging factual allegations that plausibly state claim at the outset. The court heard argument on the second motion to dismiss on September 25, 2015. Because the amended complaint still failed to meet basic pleading requirements, particularly with regard to what actions were taken under color of law for purposes of section 1983 liability, the court granted plaintiffs leave to again amend for another opportunity to plead the necessary specifics to make their section 1983 claims plausible.

Plaintiffs filed their second amended complaint October 5, 2015. Defendants again move to dismiss plaintiffs' latest iteration (the third) of their complaint.

ALLEGATIONS

Former Eugene Police Officer, Stefan Zeltvay, lived near plaintiff Jane Doe and Jean Coe and allegedly physically assaulted both plaintiffs several times over several years ending in July of 2012. Plaintiffs allege that Zeltvay "acted under color of state law, in that he misused his power possessed by virtue of state law and acted in a way possible because he was clothed with the authority of state law." Second Amended Complaint (SAC) at ¶ 13. Specifically, plaintiffs allege

---

[1] Plaintiffs added a paragraph asserting that the Eugene police officer committing the alleged underlying constitutional violation acted under color of law via misuse of power because he was clothed with authority of state law (¶ 11), inserted some case cites (¶21), added a paragraph alleging that discovery will reveal that defendant Kerns had notice of numerous incidents alleged in the complaint (¶29), and added an introduction ("The following allegations are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery:") to previous paragraph 38 (¶40) . First Amended Complaint (#27).

Page 2 - FINDINGS AND RECOMMENDATION

that Zeltvay

> displayed his police powers in the neighborhood even when he was off-duty, driving his police car with his emergency lights flashing, following people driving through the neighborhood; and displayed his service firearm to plaintiffs and others while off-duty.

SAC at ¶ 14.

Plaintiffs allege that they both knew Zeltvay was police officer and that they were both intimidated and dissuaded from reporting the assaults because they feared they would not be believed. SAC at ¶ 15.[2] Moreover, plaintiffs assert they

> believed that Zeltvay was acting or purporting to act in the performance of his official duties, with the purpose and effect of influencing the behavior of others; and his behavior was related in a meaningful way to Zeltvay's governmental status, in that that status intimidated the plaintiffs into not making complaints about his behavior.

SAC at ¶ 17.

Plaintiffs allege the Eugene Police Department (EPD) began an official investigation into Zeltvay's sexually abusive behavior in July of 2012 with Zeltvay going on administrative leave in December of 2012 and ultimately resigning and pleading guilty to five counts of sexual harassment and one count of sexual abuse on July 24, 2013. SAC at ¶¶ 18-20.

Plaintiffs allege that the EPD investigation revealed a number of women who were sexually abused by Zeltvay over several years including co-workers and relatives of co-workers. SAC at ¶¶ 21-23. Plaintiffs further allege that the investigation report makes clear that Zeltvay's sexually aggressive and assaultive behavior was notorious among EPD supervisors and tolerated. SAC at ¶ 24.

---

[2] Plaintiffs further allege that an EPD investigator later noted regarding plaintiff Coe that it was apparent that had Zeltvay not been a police officer she would have acted more immediately. SAC at ¶ 16.

Plaintiffs also allege several EPD employees stated it was common knowledge for years that Zeltvay was sexually harassing women asserting that at a wedding in 2010 or 2011 Zeltvay bit woman and forced another to sit on his lap in view of numerous EPD staff. SAC at ¶¶ 27-28. In May of 2012, plaintiffs allege, Zeltvay pursued a slain EPD officer's female relative at that officer's memorial and that the relative asked defendant EPD supervisor Jennifer Bills "to run interference." SAC ¶ 30. Plaintiffs alleges that Bills was uncomfortable around Zeltvay because of his "close and touchy method of interaction with women." SAC at ¶31. Plaintiffs also allege that discovery will reveal other facts such as defendant EPD chief Pete Kerns knowledge of Zeltvay's conduct. SAC at ¶ 33.

Plaintiffs also allege discovery will reveal that defendant the City of Eugene knew of Zeltvay's conduct and acquiesced in that conduct by failing to properly supervise and discipline its officers. SAC at ¶¶ 41, 45.

## DISCUSSION

Defendants move to dismiss arguing that the complaint fails to state a claim of a constitutional violation, fails to state a claim on whether Zeltvay acted under color of state law, fails to state a claim of supervisor liability, and fails to state a <u>Monell</u> claim. Defendants also argue that the claims are barred by the statute of limitations at any rate.

A.   <u>Failure to State a Claim</u>

> [w]hile a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

Page 4 - FINDINGS AND RECOMMENDATION

will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level....

Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (2007) (citations omitted). Moreover, the Supreme Court has emphasized that, when assessing the sufficiency of a complaint, a court must distinguish factual contentions-which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted-and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. at 678 (2009). In short, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id.[3]

1.   Under Color of Law

To state a claim under 42 U.S.C. § 1983, plaintiffs must allege the violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by

---

[3]Plaintiffs asserts that they need only plead allegations of supervisor and Monell liability generally and that they can fill in the gaps with discovery. See, e.g., Amnesty America v. Town of West Hartford, 363 F.3d 113, 130, n. 10 (2d Cir. 2004) ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation."). However, while there is no heightened pleading standard for Monell claims, post Iqbal, there must be more than mere conclusory allegations. See, e.g., Young v. City of Visalia, 687 F.Supp.2d 1141, 1149 (E.D. Cal. 2009) ("However, Iqbal has made clear that conclusory, "threadbare" allegations that merely recite the elements of a cause of action will not defeat a motion to dismiss.... In light of Iqbal, it would seem that the prior Ninth Circuit pleading standard for Monell claims (i.e. 'bare allegations') is no longer viable."); AE v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (Monell allegations in a complaint may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively).

Page 5 - FINDINGS AND RECOMMENDATION

a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

The claims against the individual defendants and the City are based on alleged constitutional torts committed by Stefan Zeltvay, a former Eugene police officer. As noted above, plaintiffs allege Zeltvay "acted under color of state law, in that he misused his power possessed by virtue of state law and acted in a way possible because he was clothed with the authority of state law." Plaintiffs attempt to provide factual support for this allegation by alleging that Zeltvay "displayed his police powers in the neighborhood even when he was off-duty, driving his police car with his emergency lights flashing, following people driving through the neighborhood; and displayed his service firearm to plaintiffs and others while off-duty." Finally, plaintiffs allege they knew he was an EPD officer and thus were intimidated and dissuaded from reporting his assaults.

These allegation are nothing more than a bare legal conclusion even when considered in the context of the complaint as a whole. Indeed, the law provides that an individual acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941).

Section 1983 does not make all torts committed by a law enforcement officer constitutional in nature, particularly when the officer is off-duty. See Naffe v. Frey, 789 F.3d 1030, 1036 (9th Cir. 2015). Whether an off duty officer acts under color of law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties. Id. To accept plaintiff's bare legal conclusion would render any tortious conduct a constitutional

violation when an officer displays his patrol vehicle at his home and in his neighborhood.[4]

An off-duty police officer

> acts under color of state law when (1) the [officer] "purport[s] to or pretend[s] to act under color of law," Stanewich, 92 F.3d at 838; McDade, 223 F.3d at 1141, (2) his "pretense of acting in the performance of his duties ... had the purpose and effect of influencing the behavior of others," Anderson, 451 F.3d at 1069, and (3) the harm inflicted on plaintiff " 'related in some meaningful way either to the officer's governmental status or to the performance of his duties,' " id. (quoting Martinez v. Colon, 54 F.3d 980, 987 (1st Cir.1995)). On the other hand, an [officer] does not act under color of state law when he pursues private goals via private actions. See id.; see also Townsend v. Moya, 291 F.3d 859, 861–62 (5th Cir.2002).

Id. at 1037.

The mere fact that Zeltvay used his police car in the neighborhood and displayed his side arm which alerted plaintiffs to Zeltvay's status as a police officer, does not transform his subsequent and unrelated actions into acts performed under color of state law. The focus of the inquiry is not on what plaintiffs knew about his employment, but rather on how Zeltvay used his position as an officer to harm them. See id. at 1039.

Plaintiffs have had numerous opportunities to allege facts beyond mere legal conclusions in response to the three motions to dismiss and have not done so. In this third opportunity to allege

---

[4]Plaintiffs' cite to Anderson v. Warner, 451 F.3d 1063 (9th Cir. 2006) does not support that the alleged conduct states action under color of law. In that case, an off-duty officer assaulted the plaintiff after being involved with him in a motor vehicle accident. The officer told witnesses that he was a cop and to stay back. Id. at 1065-66. Someone further told the crowd to disperse and that it was a police matter and the officer did not contradict the statement. Id. The court found such statements had the effect of influencing the witnesses showing action under color of state law. Id.; see also, Naffe, 789 F.3d at 1038 (specifically associating actions with law enforcement position suffices to show conduct under color of law). In this case, plaintiffs allege, after three attempts nothing more than their own personal knowledge of Zeltvay's position as an EPD officer. Plaintiffs allege no facts demonstrating Zeltvay associated his actions during the alleged attacks with his position as an EPD officer. Indeed, plaintiffs provide no specific allegations regarding the assaults themselves despite the court's request for such allegations following the second motion to dismiss.

Page 7 - FINDINGS AND RECOMMENDATION

specifics that would give rise to a plausible section 1983 claim, plaintiffs have still failed to allege specific facts or circumstances that would satisfy the elements of such a claim. Rather, it is obvious that their legal theory essentially boils down to the proposition that the mere facts that Zeltvay was employed as a police officer and plaintiffs were aware of his employment is sufficient to supply the "acting under color of law" element to any and all of Zeltvay's conduct towards plaintiffs even while off-duty. Such a theory essentially transforms the "acting under color of law" element to "being vested with the power to act under color of law." Such is clearly not the law. See id. at 1038 (not every act of a person known to be a state employee, even some acts informed by employment experience, is state action). Accordingly, the entire complaint should be dismissed as the failure to allege an underlying constitutional violation necessarily negates supervisor and Monell liability. A finding that an officer inflicted no constitutional injury on a plaintiff in a Section 1983 action is not only conclusive as to the officer, but also as to the city. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Moreover, a supervisor is only liable for actions or omissions that are causally connected to the alleged constitutional violation. Where there is no constitutional violation, there can be no supervisor liability under section 1983. Cf. id.

2.    Supervisory Claim

A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." Redman, 942 F.2d at 1447.

Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

The causal connection may be established by, for instance, knowingly refusing to terminate a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 968 (9th Cir. 2001). In other words, a supervisor may be liable for acquiescing to the constitutional violation.

Here, again, plaintiffs merely plead a legal conclusion and assert discovery will show that the legal standard is met. However, plaintiffs must allege sufficient facts to plausibly establish the defendant's "knowledge of" and "acquiescence in" the unconstitutional conduct of subordinates. Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2011) (quoting Starr, 652 f.3d at 1206-07).

The only attempt in the complaint to allege facts are a conclusory[5] reference to Zeltvay's conduct being common knowledge at the Department and two specific examples: (1) an off duty incident at a wedding involving Zeltvay biting a woman and forcing another to sit on his lap; and (2) an incident out of town during a memorial for a slain officer in which Zeltvay allegedly pursued the slain officer's female relative to the extent that she asked defendant Bills to run interference. Plaintiffs also allege that Bills was aware some women were uncomfortable around Zeltvay. These allegations do not plausibly suggest Bills or Kerns had knowledge of any unconstitutional conduct on the part of Zeltvay and acquiesced to it. At best, it suggests that Bills may have known about some ordinary tortious conduct.

---

[5]Plaintiff does reference an "investigation memorandum" in which a "sergeant" was aware of background information pertinent to Zeltvay's conduct including conduct directed toward the sergeant's wife. SAC at ¶ 29. But this does not reference the individual defendants' knowledge and it is dated after the Department placed Zeltvay on leave.

Page 9 - FINDINGS AND RECOMMENDATION

Again, plaintiffs were made aware of the deficiencies in the complaint regarding the failure to allege sufficient facts to plausibly plead supervisor liability and have failed to do so in the amended complaint. In addition, plaintiffs do not suggest what additional facts they might plead in support of their claims.[6] The supervisor liability claims should be dismissed with prejudice.

### 3.    Monell Liability

Plaintiffs appear to argue that merely alleging the constitutional deprivation resulted from official policy, custom, or practice is sufficient to state a Monell claim. However, as noted above, post-Iqbal, plaintiffs must now allege specific facts.

A city may be liable for a section 1983 violation under Monell v. Department of Soc. Servs., 436 U.S. 658 (1978), only where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694.

Municipal liability may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. See Price v. Sery, 513 F.3d 962, 966 (9th

---

[6]Indeed, plaintiffs fail to address supervisory liability in their response to this motion to dismiss. With respect to previous motions to dismiss, plaintiff's counsel misinterpreted the law as permitting conclusory allegations with discovery to fill in the holes, further demonstrating a lack of any factual support at the outset to support a plausible claim.

Page 10 - FINDINGS AND RECOMMENDATION

Cir. 2008); Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004); Ulrich v. City and County of San Francisco, 308 F.3d 968, 984–85; Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

Plaintiffs do not allege any facts suggestive of an expressly adopted policy, a longstanding practice or custom, ratification of conduct, or a decision by a decision-maker that resulted in the alleged constitutional deprivation beyond mere conclusions. Plaintiffs do assert that the post-conduct investigation, the conclusory "common knowledge" allegation, and the wedding and memorial incidents offer factual support for the Monell claim. Thus, it appears that plaintiffs rely on a deliberate indifference theory or custom of accepting such behavior.

Generally, absent a formal governmental policy, plaintiffs must allege a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992). The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." Monell, 436 U.S. at 691. Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984); see also, Meehan v. Los Angeles County, 856 F.2d 102 (9th Cir. 1988) (two incidents not sufficient to establish custom); Davis v. Ellensburg, 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy).

If plaintiffs meant to rely on a lack of training as the basis for liability, then the need for more or different training must be so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989). The

Page 11 - FINDINGS AND RECOMMENDATION

complaint is simply devoid of such facts and, in light of Iqbal, plaintiffs' assertion that a discovery fishing expedition will reveal the necessary facts is insufficient. Again, the failure to plead facts at this point or to even alert the court to further facts in the response to the third motion to dismiss, should result in the dismissal of this claim with prejudice.

B.  Statute of Limitations

Regardless of whether plaintiffs have or could plead sufficient facts to plausibly allege claims for Monell or supervisor liability, the amended complaints along with plaintiffs' responsive briefs now makes clear that all claims are barred under the statute of limitations. Plaintiffs attempt to save their claims by asserting that the statute of limitations does not begin to run until they discovered the named defendants' roles in their injuries, but under federal law, the claims accrued when plaintiffs knew of the injuries themselves.

The parties agree that the applicable statute of limitations is two years under O.R.S. § 30.275(9). Plaintiff filed this action on January 28, 2015. There are no allegations in the second amended complaint within the limitations period even with plaintiff Doe's tolling agreement from June 25, 2014 until December 20, 2014.

Plaintiffs assert that although they knew of the injuries which form the basis of their claims, the cause of action did not accrue until they discovered the named defendants were responsible, which apparently did not happen until they obtained documents subsequent to the investigation at some unspecified time, but after July of 2012. SAC ¶ 26.

Although Oregon law provides the statute of limitations period, accrual is the date on which the statute of limitations begins to run. Under federal law, a claim accrues when the plaintiff knows

Page 12 - FINDINGS AND RECOMMENDATION

or has reason to know of the injury which is the basis of the action. Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1048 (9th cir. 2012).[7]

Plaintiffs assertion that the claims accrue when they discover the responsible party, is based on an Oregon case. See Cole v. Sunnyside Marketplace, LLC, 212 Or. App. 509, 519 (2007) (discovery rule provides that claim accrues when plaintiff should know of harm to a legally protected interest and that the defendant is the responsible party). However, Chief Judge Aiken of this court rejected a similar argument stating:

> Finally, plaintiffs' assertion regarding the tolling of the statute of limitations is without merit. Even assuming that plaintiffs did not have knowledge of the additional defendants' roles until after the limitations period lapsed, the fact remains that "federal law determines when a civil rights claim accrues." Lukovsky v. City & Cnty. of S.F., 535 F.3d 1044, 1048 (9th Cir. 2008), cert. denied, 556 U.S. 1183 (2009) (citation omitted). Under federal law, the statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id. (citation and internal quotations omitted); see also Clavette v. Sweeney, 132 F.Supp.2d 864, 874 (D.Or. 2001) ("[t]he Ninth Circuit has stated repeatedly the plaintiff need not also know the identity of the person who caused the injury" for a claim to accrue under federal law) (citations omitted). For this reason, the precedent that plaintiffs rely on in support of their tolling argument is unpersuasive.

Strong v. City of Eugene, 6:14-cv-1709-AA (D.Or.) Opinion and Order dated May 19, 2015 at p. 12-13.

Accordingly, plaintiffs' claims are time-barred and this action should be dismissed.

///

///

---

[7] Even with respect to a Monell claim, the period begins to run when the injury is discovered rather than when the City's role is discovered. See, e.g., Lawson v. Rochester City School Dist., 446 Fed.Appx. 327, 329 (2d Cir. 2011) ("We decline to eviscerate that rule by holding that the limitations period for a cause of action against a municipality runs anew upon the future discovery of facts tangentially related to a Monell claim.").

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss (#40) should be granted and this action should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 21 day of January 2016.

THOMAS M. COFFIN
United States Magistrate Judge